**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

```
DON GOLDHAMER and ROBIN SCHIRMER,    )
                                     )
            Plaintiffs,              )
                                     )
       v.                            )       No.  07 C 5286
                                     )
LT. NAGODE, CMDR. KEATING,           )
OFFICER POHL, UNKNOWN POLICE         )
OFFICERS and EMPLOYEES of the        )
CITY OF CHICAGO, individually        )
and in their official capacities,    )
and the CITY OF CHICAGO,             )
                                     )
            Defendants.              )
```

**MEMORANDUM OPINION**

Before the court is defendants' motion to dismiss certain counts of the complaint.  For the reasons explained below, the motion is denied in part and granted in part.

**BACKGROUND**

The plaintiffs' allegations, which are taken as true and viewed in a light most favorable to plaintiffs for the purposes of this motion, are as follows.

This case arises out of an occurrence at the Taste of Chicago in Grant Park on July 2, 2006, when approximately a dozen individuals near a United States Armed Services recruitment booth were handing out flyers and speaking to people about the role of the military and alternatives to military service.  Plaintiffs Don Goldhamer and Robin Schirmer were among those individuals.

Schmirmer stood near the recruitment booth and held a sign that read "Chicago Is A Free Speech Zone." Goldhamer was present as an observer on behalf of the National Lawyers Guild "because of problems in the past of Chicago police violating the rights of those exercising their First Amendment rights." (Compl. ¶ 8.) He wore a red National Lawyers Guild cap.

After the demonstrators had been peacefully leafleting for about an hour on the public sidewalk ten to fifteen feet from the booth, two Chicago police officers arrived and, without elaboration, told them to "move away." The officers refused to identify their supervisor(s). Soon thereafter, a number of police officers, including defendant Lieutenant Nagode, arrived. Nagode ordered the officers to form a line in front of the recruitment booth. He also told Schirmer and others to put their signs away, that they could not protest there, and that they had to go to a "free speech zone." None of the demonstrators were aware of a "free speech zone" at the Taste of Chicago.

Schirmer folded her sign, put it in her purse, and began leafleting. Goldhamer asked Nagode why they could not display signs; Nagode replied, "Because I'm telling you." Goldhamer then asked Nagode what law he was enforcing; Nagode replied, "Just follow my order." Nagode then walked behind the recruitment booth and used his cell phone to call a supervisor.

One demonstrator, Melissa Woo (who is not a party to this action), was warned to go to the "free speech zone." When she did not comply with a second request to leave, she was arrested.

Nagode then threatened to issue an order to disperse. He also announced that the "festival area" was not "public" and that those assembled could not hand out leaflets or walk around with t-shirts bearing slogans. At this point, Schirmer moved to stand by people who were waiting in line to shoot baskets at the booth, and he spoke with them about military service.

Defendants Commander Keating and Officer Pohl arrived along with various police lieutenants. An assistant corporation counsel for the City (who refused to identify himself) was also present at this point. Nagode then gave a general order to the demonstrators to disperse. Each lieutenant appeared to choose someone to arrest, and Keating gave an order to arrest several of the demonstrators.

When told to disperse, Goldhamer did not leave; he assumed that the order did not apply to him because "he was not engaged in any protest." (Compl. ¶ 20.) He and Schirmer, along with four others, were arrested. None of the arresting officers provided a reason for the arrests. Plaintiffs and the other arrestees were taken to a tent in Grant Park that was adjacent to a temporary police headquarters and from there to the 1st District police station.

Plaintiffs were charged with disorderly conduct in violation of Chicago Municipal Code § 8-4-010(d) ("subsection(d)" or the "ordinance"), the text of which is discussed _infra_. They appeared in court four times on the charges; the police officers did not appear at those hearings. At the fourth court appearance, the City sought another continuance, but the court denied the motion and dismissed the charges against plaintiffs and the other four individuals.

The complaint in this action contains nine counts. In Count I, plaintiffs seek a declaration that the disorderly conduct ordinance is unconstitutional as well as an injunction prohibiting its enforcement. Plaintiffs also bring § 1983 claims for First Amendment retaliation (Count II); conspiracy (Count III); violation of due process in that the ordinance is impermissibly vague (Count IV); and false arrest (Count V). In Count VI, plaintiffs seek to hold the City liable for damages pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). Plaintiffs' state-law claims are for malicious prosecution (Count VII); respondeat superior (Count VIII); and indemnification (Count IX).

Defendants now move to dismiss Counts I, III, and IV with prejudice as to all defendants and Counts II and VI with prejudice as to the City.

## **DISCUSSION**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 354 (3d ed. 2004).  When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  <u>Hentosh v. Herman M. Finch Univ. of Health Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999).  However, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'"  <u>EEOC v. Concentra Health Servs., Inc.</u>, 496 F.3d 773, 776 (7th Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, --- U.S. ----, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)).  Our Court of Appeals has cautioned courts and litigants against "overread[ing]" <u>Bell Atlantic</u>, <u>see</u> <u>Limestone Dev. Corp. v. Village of Lemont</u>, 520 F.3d 797, 803 (7th Cir. 2008), and the Supreme Court has since dispelled the notion that it had abandoned notice pleading.  <u>See Erickson v. Pardus</u>, --- U.S. ----, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).  So, "heightened fact pleading of specifics" is still not required.  <u>Killingsworth v. HSBC Bank Nevada, N.A.</u>, 507 F.3d 614, 618 (7th Cir. 2007) (citation and internal quotation marks omitted). Nevertheless, the complaint must "contain enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u>

## A. First Amendment--Constitutionality of Chicago's Disorderly Conduct Ordinance (Counts I and IV)

### 1. Count I

In Count I, plaintiffs allege that subsection (d) of Chicago's disorderly conduct ordinance is unconstitutional, facially and as applied, in that it violates their rights under the First Amendment, as incorporated against the states by the Fourteenth Amendment, as well as their rights under the Illinois Constitution.[1] Defendants contend that as a matter of law, subsection (d) is constitutional on its face.[2] The relevant portion of the ordinance provides:

> A person commits disorderly conduct when he knowingly:
> . . .
> (d) Fails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm . . .

---

[1] We analyze First Amendment claims under the federal and Illinois Constitutions together and keep in mind that protection of these freedoms is somewhat broader under the Illinois Constitution than under the federal Constitution. See Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston, 250 F. Supp. 2d 961, 979 (N.D. Ill. 2003). We reject defendants' argument that plaintiffs have failed to state a claim under the Illinois Constitution for not stating which provisions of the Illinois Constitution were allegedly violated. Count I specifies that it is being brought under "Sections 2, 4, and 5" of the Illinois Constitution. (We can infer that these sections are contained within Article 1 of the Illinois Constitution.) As for defendants' contention that a claim under the Illinois Constitution would be barred by the one-year statute of limitations under the Illinois Tort Immunity Act, the statute of limitations is an affirmative defense. Given that defendants' argument is undeveloped, and we cannot say that the complaint "plainly reveals" that the claim under the Illinois Constitution is untimely, see United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005), dismissal under Rule 12(b)(6) on the basis of a statute of limitations would be inappropriate.

[2] Although defendants seek dismissal of Count I in its entirety, they present no argument regarding plaintiffs' as-applied challenge.

Chicago, Ill. Municipal Code § 8-4-010(d).

As an initial matter, the parties dispute the standard by which we should evaluate the constitutionality of subsection (d)-- "strict scrutiny" or "intermediate scrutiny." Defendants maintain that the provision is a content-neutral "time, place, or manner" regulation of conduct and therefore need only meet the requirements of "intermediate scrutiny." Plaintiffs, on the other hand, contend that the ordinance is so broad that it restricts all speech and is therefore subject to strict scrutiny even though it is content-neutral.

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.'" Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (citations and emphasis omitted). Generally, if a regulation is content-neutral, it is subject only to intermediate scrutiny. See DiMa Corp. v. Town of Hallie, 185 F.3d 823, 827 (7th Cir. 1999).

Plaintiffs wisely concede that subsection (d) is content-neutral. The provision does not regulate speech on the basis of the substance of any message. (In fact, it does not purport to regulate speech at all, as discussed <u>infra</u>.) But, plaintiffs contend, we should employ strict scrutiny because subsection (d) "covers all speech at all times, in all places," Pls.' Mem. in Opp'n at 3, and even content-neutral regulations receive strict scrutiny when they are all-encompassing. In support of their argument, plaintiffs cite <u>City of Ladue v. Gilleo</u>, 512 U.S. 43 (1994), in which the Court held unconstitutional an ordinance prohibiting nearly all residential signs, and <u>Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton</u>, 536 U.S. 150 (2002), in which the Court held unconstitutional an ordinance barring door-to-door advocacy without first obtaining a permit.

We do not believe that either <u>Ladue</u> or <u>Watchtower Bible</u> guides our analysis. The decisions are highly fact-specific, and the ordinances there targeted completely different conduct than does subsection (d). In both cases, the Court was particularly concerned about the breadth and unprecedented nature of the ordinances at issue; subsection (d) does not have these characteristics. We do not agree with plaintiffs that the decisions stand for the general proposition that strict scrutiny should be applied to all laws that have a "broad impact on possible avenues of expression, even if they are content neutral." (Pls.'

Mem. in Opp'n at 3.)  The <u>Ladue</u> ordinance was content-based, and in

<u>Watchtower Bible</u>, the Court expressly declined to state which level

of scrutiny it was using.

Subsection (d) is content-neutral.  But is it really a "time,

place, and manner" regulation, as the City asserts (and plaintiffs

dispute)?  Time, place, and manner regulations "do not regulate

what is said, but merely such matters as when, where, and how

loud."  1 Rodney A. Smolla, <u>Smolla and Nimmer on Freedom of Speech</u>

§ 8:36 (2006) (emphasis omitted).  Subsection (d) is probably

better characterized as a regulation of conduct that can be seen as

having an incidental effect on speech and thus subject to the

analysis set forth in <u>United States v. O'Brien</u>, 391 U.S. 367

(1968).  The distinction between "time, place, and manner"

regulations and <u>O'Brien</u>-type regulations, however, is one without

a difference, and the approach chosen "has no real effect on the

outcome of the case, as the <u>O'Brien</u> analysis and the <u>Ward</u> time,

place and manner analysis are really just variations on the same

principle."  <u>Hodgkins ex rel. Hodgkins v. Peterson</u>, 355 F.3d 1048,

1057 (7th Cir. 2004).  We will use <u>Ward</u>'s formulation of the

analysis because it is more streamlined.[3]

_____

[3]  For example, the first prong of the <u>O'Brien</u> formulation of the
analysis--the requirement that the governmental regulation be within the
constitutional power of the government--is superfluous.  <u>See</u> Smolla, <u>supra</u>, § 9:8
(2000).

To pass constitutional muster under <u>Ward</u>, a content-neutral statute regulating the time, place, and manner of expression must (1) be narrowly tailored to serve a significant governmental interest and (2) allow for ample alternative channels for communication of the information. 491 U.S. at 791. As for the first prong, it is difficult to determine exactly what "significant" interest or interests defendants contend are being served by subsection (d) because the stated interest(s) constantly shift throughout defendants' briefs. Defendants offer all of the following versions of the City's interests: maintaining public order; "[e]nsuring the safety and navigability of the streets and public places"; "protecting the public from disturbances that threaten substantial or serious annoyance or alarm"; protecting "safety and serenity"; "ensuring the safety and convenience of public places"; "protecting the public from disturbances that threaten substantial harm, serious annoyance, or alarm"; and "regulating serious inconvenience, annoyance, or alarm." (Defs.' Mem. at 6-7; Defs.' Reply at 4-5.)  It is unclear whether defendants are using some of these phrases  interchangeably, but in any event their arguments are imprecise.[4]

---

[4/] Additionally, we must keep in mind the Supreme Court's admonition that "freedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil *that rises far above public inconvenience, annoyance, or unrest*. There is no room under our Constitution for a more restrictive view." <u>Terminiello v. City of Chicago</u>, 337 U.S. 1, 4 (1949) (citations omitted and emphasis added).  If protecting "serenity" is the purpose of subsection (d), defendants face an uphill battle.

Defendants also claim that subsection (d) is "narrowly tailored" because there are "six conditions that limit its reach":

> (1) a disturbance "likely to cause substantial harm or serious inconvenience, annoyance or alarm" must be in progress; (2) the disturbance must involve "three or more persons"; (3) the disturbance must be "in the immediate vicinity"; (4) a peace officer must issue an order to disperse; (5) the person subject to the dispersal order must know the order is being issued by a police officer; and (6) the person must "knowingly" fail to obey the order.

(Defs.' Mem. at 6.) "To satisfy the narrowly tailored test, an ordinance need not be the least restrictive method for achieving the government's goal. Nevertheless, while a regulation does not have to be a perfect fit for the government's needs, it cannot substantially burden more speech than necessary." Weinberg v. City of Chicago, 310 F.3d 1029, 1040 (7th Cir. 2002) (citation omitted). "In the context of a First Amendment challenge under the narrowly tailored test, the government has the burden of showing that there is evidence supporting its proffered justification." Id. at 1038 (finding that the City did not demonstrate that an anti-peddling ordinance advanced a significant governmental interest and stating "the City cannot blindly invoke safety and congestion concerns without more"). Defendants fail to explain why or how we can decide as a matter of law that subsection (d) is narrowly tailored to serve a significant government interest. In our view, these are factual determinations that cannot be resolved on a motion to dismiss. See, e.g., C.L.U.B. v. City of Chicago, No. 94 C 6151,

1996 WL 89241, at *26 (N.D. Ill. Feb. 27, 1996).  Defendants also contend that the ordinance allows for ample alternative channels of communication.   This is another factual question that is inappropriate to resolve on a motion to dismiss.[5]   See, e.g., Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118, No. 90 C 6604, 1991 WL 104176, at *4 (N.D. Ill. June 12, 1991).

Additional arguments made by defendants are that subsection (d) is not overbroad; that it does not permit a "heckler's veto" as plaintiffs contend; and that it has previously been found to be constitutional.[6]  Because we have already determined that we cannot grant defendants' motion as to Count I, we need not discuss these points at length, but we do wish to discuss the "heckler's veto," which is inconsistent with the First Amendment.   See Nelson v. Streeter, 16 F.3d 145, 150 (7th Cir. 1994).   As plaintiffs point out, subsection (d) does not require any causal nexus between the conduct of the three or more persons committing acts of disorderly conduct that are "likely to cause substantial harm or serious inconvenience, annoyance or alarm" and the persons who are ordered to disperse.   It seems that subsection (d) therefore permits a heckler's veto, "in which persons who themselves violate the law by

---

[5]  Defendants present the following fact-based argument that goes beyond the pleadings: "[T]he City made an alternative nearby location for Plaintiffs and other protestors to assemble near the Taste of Chicago, permitting the Plaintiffs to reach their intended audience."  (Defs.' Reply at 6.)

[6]  The decisions cited by defendants are all from the state courts, with the exception of one federal district court decision.  Defendants concede that they are not binding authority.

reacting with violence to speech that offends them are able to precipitate the arrest of a speaker who is obeying the law and exercising his or her constitutional rights." Smolla, <u>supra</u>, § 10:41 (2004); <u>see also</u> <u>Cox v. Louisiana</u>, 379 U.S. 536, 551 (1965) ("[C]onstitutional rights may not be denied simply because of hostility to their assertion or exercise."). An onlooker who wants to interfere with a peaceful assembly can simply commit disorderly conduct in an attempt to stop the assembly. We will not belabor the point, but that is our initial impression.

### 2. <u>Counts I and IV</u>

Plaintiffs allege in both Counts I and IV that subsection (d) is unconstitutionally vague in violation of their due process rights. "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." <u>City of Chicago v. Morales</u>, 527 U.S. 41, 56 (1999).

Defendants maintain that subsection (d) "makes clear to people of common intelligence that persons commit disorderly conduct when they knowingly fail to obey a lawful order to disperse issued by a peace officer where three or more persons in the immediate vicinity are committing acts likely to cause substantial harm or serious inconvenience, annoyance or alarm." (Defs.' Mem. at 10-11.)

According to defendants, the ordinance "provides notice that no one could possibly miss." (Defs.' Reply at 9.) We are unpersuaded; we have serious doubts about several aspects of subsection (d). The first is the phrase "lawful order." A citizen receiving an order to disperse must be able to determine whether the order is "lawful." There are many factors in the analysis of whether an order is "lawful," and a complication here is that violation of the ordinance lies simply in failing to obey the order of dispersal; no underlying criminal conduct or intent is required. Defendants' argument that the term "lawful order" need not be defined because "no one is obliged to obey an order of dispersal that is issued illegally, for instance when not authorized by a ongoing, serious disturbance in the immediate vicinity," Defs.' Reply at 11, is circular. The second problematic portion of the provision is the requirement that three persons be committing "acts of disorderly conduct" when those "acts" are not defined in subsection (d). (Other acts of disorderly conduct are defined in the other subsections of the ordinance, but subsection (d) does not refer to them.) Third, the term "immediate vicinity" is also unclear. What distance constitutes the "immediate" vicinity"? "Immediate vicinity" of what or whom? These portions of subsection (d) raise signficant vagueness issues. It is difficult for us to see how the ordinance provides fair notice to citizens of the conduct proscribed.

Moreover, subsection (d) poses the potential for arbitrary and discriminatory enforcement in that it involves determinations regarding what acts of disorderly conduct are "likely to cause" "substantial" harm or "serious" inconvenience, annoyance or alarm. Defendants assert that "'likely to cause' and 'serious' need not be defined by the Ordinance because they have perfectly clear common meanings" and an "officer must be guided by the generally accepted meanings of these terms, and not his subjective inclinations, in deciding whether an ongoing disturbance merits an order to disperse." (Defs.' Reply at 11.) We disagree. The phrases "likely to cause" and "serious" are not explicit standards. They provide little guidance for those who are applying subsection (d) and create the risk that the ordinance will be enforced at the whim of a police officer.

Because defendants have failed to show that plaintiffs cannot prove any facts that would entitle them to relief on Counts I and IV, the motion to dismiss will be denied as to those claims.

**B.** **First Amendment Retaliation (Count II) and Monell (Count VI)**

Count II is a claim that defendants Nagode, Keating, and Pohl falsely arrested plaintiffs in direct retaliation for plaintiffs' exercise of their First Amendment rights. Plaintiffs allege that the defendant officers "either had final policymaking authority or had been delegated with the same." (Compl. ¶ 35.) Count VI is a <u>Monell</u> claim in which plaintiffs allege that the officers'

misconduct was undertaken pursuant to the policy and practice of the City.

The City moves to dismiss Counts II and VI, arguing that "[p]laintiffs' allegations are in direct conflict with the City's express policy prohibiting retaliation on the basis of First Amendment expression." (Defs.' Mem. at 15.) Attached as Exhibit B to defendants' motion is a copy of a consent decree that binds the City and expressly prohibits First Amendment retaliation. Assuming without deciding that the consent decree constitutes City policy, it could possibly be a defense that the City may assert in the future, but it is not a ground for dismissal. We cannot dismiss a complaint based on matters outside the pleadings. See, e.g., Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1430 (7th Cir. 1996).[7]

The City also asserts that plaintiffs have failed to allege facts supporting their allegation that the defendant officers are final policymakers. The City is correct that these officers do not qualify as policymakers for the City. See Latuszkin v. City of Chicago, 250 F.3d 502, 505 (7th Cir. 2001). But plaintiffs respond that they can prove a municipal policy or custom by demonstrating

---

[7] The City additionally contends: "Plaintiffs' repeated allegations that the City has a policy prohibiting speech against the war in Iraq is also contrary to the record, given the fact that the City Council has publicly passed not one but two resolutions expressing disapproval of the war and urging the United States government to withdraw from Iraq." (Defs.' Mem. at 16.) Attached to the motion are these resolutions, which are also outside the pleadings and which we also decline to consider given that defendants have moved for *dismissal*, not for summary judgment.

a widespread practice that is so permanent and well-settled as to constitute a custom or usage with the force of law. (In Count VI, plaintiffs have alleged that City has a widespread practice of suppressing speech.) In reply, the City contends that plaintiffs have failed to plead facts in support of the alleged widespread practice. As stated <u>supra</u>, however, "heightened fact pleading of specifics" is not required, <u>Killingsworth</u>, 507 F.3d at 618; it is enough that the complaint contains enough facts to state a facially plausible claim to relief. Accordingly, Counts II and VI will not be dismissed.

## C.   **Conspiracy (Count III)**

Count III is a claim for conspiracy in violation of § 1983. Defendants argue that we should dismiss Count III because plaintiffs have not alleged even the minimal facts required to satisfy federal notice-pleading standards.

"It is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." <u>Hoskins v. Poelstra</u>, 320 F.3d 761, 764 (7th Cir. 2003). A claim of conspiracy need not be pleaded with specificity. <u>Id.</u> The complaint sufficiently alleges the parties to the alleged conspiracy: defendants Nagode, Keating, and Pohl. But the alleged "general purpose" of the conspiracy is too general: "to deprive Plaintiffs of their constitutional rights." (Compl. ¶ 39.) Similarly, the

complaint does not specify the date of the alleged conspiracy. Although we can reasonably infer from plaintiffs' allegations that the purported agreement occurred on July 2, 2006, the date of the incident, plaintiffs should expressly allege the date of the conspiracy. Because plaintiffs have failed to allege even the minimal facts required to state a conspiracy claim, Count III will be dismissed without prejudice, and plaintiffs will be given leave to amend Count III, if they wish.

As an alternative basis for dismissal of Count III, defendants contend that the intracorporate conspiracy doctrine bars plaintiffs' claim. The doctrine, generally applied to actions brought under 42 U.S.C. § 1985, protects members of a single corporation from conspiracy liability where they committed the allegedly conspiratorial acts within the scope of their employment. See Travis v. Gary Cmty. Mental Health Ctr., Inc., 921 F.2d 108, 111 (7th Cir. 1990). The Seventh Circuit has not decided whether to apply the doctrine to § 1983 claims. Several judges in this district have extended the doctrine to certain types of § 1983 claims, see, e.g., Doe v. Board of Education of Hononegah Community High School District No. 207, 833 F. Supp. 1366, 1381-82 (N.D. Ill. 1993) (involving public school officials), but they have been more reluctant to extend it to § 1983 claims of police misconduct. We agree with our colleagues who have refused to apply the doctrine to this type of claim. See McDorman v. Smith, No. 05 C 448, 2005 WL

1869683, at *5-6 (N.D. Ill. Aug. 2, 2005) (collecting cases). The intracorporate conspiracy doctrine essentially protects employees from conspiracy liability for routine, collaborative business decisions. We do not believe that the doctrine should be extended to cover police misconduct.

## CONCLUSION

Defendants' motion to dismiss the complaint is denied in part and granted in part. The motion is denied as to Counts I, II, IV, and VI of the complaint. The motion is granted as to Count III. Count III is dismissed without prejudice, with leave to amend by August 22, 2008.


DATE:          August 4, 2008


ENTER:     _____

John F. Grady, United States District Judge