**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DON GOLDHAMER and ROBIN SCHIRMER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    No.  07 C 5286 |
| | ) |
| LT. NAGODE, CMDR. KEATING, | ) |
| OFFICER POHL, UNKNOWN POLICE | ) |
| OFFICERS and EMPLOYEES of the | ) |
| CITY OF CHICAGO, individually | ) |
| and in their official capacities, | ) |
| and the CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Before the court are the parties' cross-motions for summary judgment.  For the reasons explained below, plaintiffs' motion is granted, and defendants' motion is denied.

**BACKGROUND**

The material facts are not in dispute.  This case arises out of an occurrence at the Taste of Chicago festival in Grant Park on July 2, 2006.  Numerous individuals, including plaintiffs Don Goldhamer and Robin Schirmer, were present in the vicinity of a United States Armed Forces recruiting booth.  Some individuals who opposed military recruitment were handing out flyers and speaking to people.  At some point, defendant Lieutenant Nagode, a Chicago police officer, and several uniformed patrol officers formed a line

between the protesters and the recruiting booth.  Lieutenant Nagode
then told the protesters to go to a designated protest zone.

After certain protesters did not relocate in response to this
order, Lieutenant Nagode ordered them to disperse.  Plaintiffs did
not disperse, and they and four other individuals were then
arrested.  Plaintiffs were charged with disorderly conduct in
violation of Chicago Municipal Code § 8-4-010(d) ("subsection(d)"
or the "ordinance"), the text of which is discussed <u>infra</u>.
Plaintiffs appeared in court several times on the charges.  At the
final court appearance, the City sought another continuance, but
the court denied the motion and dismissed the charges against
plaintiffs.

The complaint in this action contains nine counts.  In Count
I, plaintiffs seek a declaration that subsection (d) of the
disorderly conduct ordinance is unconstitutional as violative of
their First Amendment rights, facially and as applied, as well as
an injunction prohibiting its enforcement.  Plaintiffs also bring
§ 1983 claims for First Amendment retaliation (Count II);
conspiracy (Count III); violation of due process in that the
ordinance is impermissibly vague (Count IV); and false arrest
(Count V).  In Count VI, plaintiffs seek to hold the City liable
for damages pursuant to <u>Monell v. Department of Social Services</u>,
436 U.S. 658 (1978).  Plaintiffs bring state-law claims for

malicious prosecution (Count VII); respondeat superior (Count VIII); and indemnification (Count IX).

Defendants previously moved to dismiss certain counts of the complaint. We denied the motion as to Counts I, II, IV, and VI and granted it as to Count III, the conspiracy claim. <u>Goldhamer v. Nagode</u>, No. 07 C 5286, 2008 WL 4866603 (N.D. Ill. Aug. 4, 2008) ("<u>Goldhamer I</u>").[1] The parties now have filed cross-motions for summary judgment. We directed the parties to limit their arguments to the issue of whether subsection (d) of the ordinance is facially unconstitutional.

## **DISCUSSION**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The evidence in the record must be viewed in the light most favorable to the nonmoving party, and on cross-motions for summary judgment, inferences are drawn in favor of the party against whom the motion under consideration was made." <u>McKinney v. Cadleway Props., Inc.</u>, 548 F.3d 496, 499-500 (7th Cir. 2008) (internal citation omitted). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a

---

[1] We dismissed the conspiracy claim for failure to state even the minimal facts required by federal notice pleading and gave plaintiffs leave to amend the claim. They chose not to amend the claim.

reasonable jury could return a verdict for the nonmoving party.'"
Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998)
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986)).  The court will enter summary judgment against a party who
does not "come forward with evidence that would reasonably permit
the finder of fact to find in [its] favor on a material question."
McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

At issue is the Chicago disorderly conduct ordinance, the
relevant portion of which provides:

> A person commits disorderly conduct when he knowingly:
> . . .
> (d) Fails to obey a lawful order of dispersal by a person
> known by him to be a peace officer under circumstances
> where three or more persons are committing acts of
> disorderly conduct in the immediate vicinity, which acts
> are likely to cause substantial harm or serious
> inconvenience, annoyance or alarm[.]

Chicago, Ill. Municipal Code § 8-4-010(d).  Plaintiffs allege that
subsection (d) violates their rights under the First and Fourteenth
Amendments to the United States Constitution, as well as their
rights under the Illinois Constitution.[2]  Plaintiffs contend that
subsection (d) is void for vagueness because it does not give
adequate notice as to what is prohibited and poses the potential

---

[2]  We analyze First Amendment claims under the federal and state
constitutions together and keep in mind that protection of these freedoms is
somewhat broader under the Illinois Constitution than under the United States
Constitution.  See Vineyard Christian Fellowship of Evanston, Inc. v. City of
Evanston, 250 F. Supp. 2d 961, 979 (N.D. Ill. 2003).

for arbitrary and discriminatory enforcement. They also contend that subsection (d) is overbroad.

Defendants, on the other hand, argue that subsection (d) is a reasonable time, place, and manner restriction that is narrowly tailored to serve a significant government interest and allows ample alternative channels of communication. Defendants also argue that subsection (d) provides both adequate notice as to what conduct is proscribed and adequate guidelines for enforcement and therefore is not unconstitutionally vague, nor is it overbroad.

## A.   First Amendment

Before addressing the parties' arguments concerning the appropriate level of scrutiny, we will discuss plaintiffs' general burden on their facial challenge to subsection (d). Defendants argue that pursuant to United States v. Salerno, 481 U.S. 739, 745 (1987), plaintiffs must establish that "no set of circumstances exists" under which the provision would be valid. Plaintiffs respond, correctly, that the stringent Salerno standard does not apply in cases involving First Amendment vagueness and/or overbreadth challenges. See Ben's Bar, Inc. v. Village of Somerset, 316 F.3d 702, 708 n.11 (7th Cir. 2003).[3]

The parties revisit the arguments they raised in the briefing on defendants' motion to dismiss concerning the appropriate level

---

[3]/   Moreover, a plurality of the Court in City of Chicago v. Morales, 527 U.S. 41, 55 n.22 (1999), questioned the viability of the Salerno standard and called it "dictum."

of scrutiny for subsection (d).  Defendants continue to maintain
that the provision is a content-neutral "time, place, or manner"
regulation of conduct and therefore need only meet the requirements
of "intermediate scrutiny."  (Defs.' Consolidated Mem. at 4-5.)
Plaintiffs contend that because the ordinance broadly affects
speech and burdens freedom of assembly, we should employ "strict
scrutiny."  (Pls.' Mem. in Supp. of Mot. at 18.)

    We analyzed this issue in our previous memorandum opinion and
concluded that subsection (d) is content-neutral because it does
not regulate speech on the basis of the substance of any message.
and indeed, does not purport to regulate speech at all.  We found
distinguishable the cases cited by plaintiffs in support of their
argument, City of Ladue v. Gilleo, 512 U.S. 43 (1994), in which the
Court held unconstitutional an ordinance prohibiting nearly all
residential signs, and Watchtower Bible & Tract Society of New
York, Inc. v. Village of Stratton, 536 U.S. 150 (2002), in which
the Court held unconstitutional an ordinance barring door-to-door
advocacy without first obtaining a permit.

    Plaintiffs again argue that Ladue and Watchtower Bible apply.
In plaintiffs' view, these decisions "direct a court to strictly
scrutinize laws that have a broad impact on possible avenues of
expression, even if they are content neutral, and to balance the
state's interest in regulating speech against the individual and
the public's interest in protecting it."  (Pls.' Mem. at 18.)  We

are still unpersuaded.  Because <u>Ladue</u> and <u>Watchtower Bible</u> are very
fact-specific, we do not believe that a mandate to strictly
scrutinize laws that "have a broad impact" on First Amendment
rights can be drawn from these decisions.

Plaintiffs conceded, and we previously concluded, that
subsection (d) is content-neutral.  That is, the regulation is not
based upon a specific viewpoint contained in speech.  In fact, it
is more of a generally applicable law that can incidentally
restrict speech in some instances.  These types of regulations are
generally subject to what is essentially intermediate scrutiny, as
set forth in <u>United States v. O'Brien</u>, 391 U.S. 367 (1968).  But
there is a troublesome element of subsection (d) that we discussed
in <u>Goldhamer I</u>, and that is the fact that the regulation seems to
permit a heckler's veto.[4]  "First Amendment rights are not subject

---

[4]  "[I]n evaluating a facial challenge to a state law, a federal court
must consider any limiting construction that a state court or enforcement agency
has proffered."  <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 795-96 (1989).
However, federal courts are "without power to adopt a narrowing construction of
a state statute unless such a construction is reasonable and <u>readily apparent</u>."
<u>Stenberg v. Carhart</u>, 530 U.S. 914, 944 (2000) (emphasis added).  Defendants
contend that in <u>City of Chicago v. Fort</u>, 262 N.E.2d 473 (Ill. 1970), the Illinois
Supreme Court "construed subsection (d), as written, to not permit the arrest
and/or prosecution of individuals engaged in lawful First Amendment protest
activity." (Defs.' Reply at 5.)  The Illinois Supreme Court's entire discussion
of the First Amendment challenge in <u>Fort</u> is as follows:
> The defendants also argue that the ordinance is overly broad because
> it potentially infringes upon conduct protected by the first
> amendment to the United States constitution.  While it is possible
> to imagine extreme circumstances in which the ordinance might be
> unconstitutionally applied we prefer to deal with those situations
> if and when they arise.  This is not a case . . . where the police
> dispersed peaceful demonstrators engaged in the lawful exercise of
> first amendment rights because of the violent reaction which the
> demonstrators engendered in a hostile audience.  In this case there
> is no suggestion that first amendment rights were being exercised by
> the defendants.  The group with which the defendants congregated had
> no constitutionally protected right to sit upon cars that they did

to the heckler's veto." <u>Nelson v. Streeter</u>, 16 F.3d 145, 150 (7th Cir. 1994) (explaining that where an artist's intentions are innocent of any desire to cause a riot, but his work so inflames the community as to cause a violent riot, the rioters are the culpable parties, not the artist); <u>see also</u> <u>Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118</u>, 9 F.3d 1295, 1299 (7th Cir. 1993) ("[T]he police are supposed to preserve order, which unpopular speech may endanger. Does it follow that the police may silence the rabble-rousing speaker? Not at all. The police must permit the speech and control the crowd; there is no heckler's veto."). Subsection (d) allows onlookers wishing to interfere with or put a stop to a peaceful assembly of people exercising their speech rights to do so by simply committing disorderly conduct that is "likely to cause substantial harm or serious inconvenience, annoyance or alarm." To the extent that subsection (d) permits a heckler's veto, it is not content-neutral. <u>See</u> <u>Forsyth County v. Nationalist Movement</u>, 505 U.S. 123, 134-35 (1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation.").

---

not own or assemble in a way which would block the free flow of pedestrian traffic on the public sidewalks.
262 N.E.2d at 476 (citations omitted). We disagree with defendants that the Illinois Supreme Court therein provided a "readily apparent" limiting construction of subsection (d). The Court did not attempt to define any words of the ordinance or limit its terms. Rather, the Court appeared to reject the defendants' overbreadth challenge on the ground that they lacked standing to assert it because they were merely loitering and not exercising any speech rights.

Although subsection (d) defies neat categorization, we must classify it as either content-neutral or content-based; there is no intermediate category.[5] Although the provision contains an element that arguably is not content-neutral, it is predominantly content-neutral. We are mindful of the Supreme Court's directives in <u>Ward v. Rock Against Racism</u>, 491 U.S. 781 (1989). There, the Court discussed the "principal inquiry in determining content neutrality" and stated: "The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." By its terms, subsection (d) is designed to maintain public order by penalizing disorderly conduct. This is a content-neutral justification, albeit with incidental effects.

Content-neutral laws, in general, are subject to intermediate scrutiny. <u>DiMa Corp. v. Town of Hallie</u>, 185 F.3d 823, 827 (7th Cir. 1999). Plaintiffs assert that the Supreme Court has never used intermediate scrutiny when considering statutes that burden the freedom of assembly. From the cases cited by plaintiffs, we are unable to discern any general rule that strict scrutiny must be applied to statutes that implicate the freedom of assembly.

---

[5] Plaintiffs cite an excellent law review article that discusses the difficulty of differentiating between content-based and content-neutral laws and in using this categorical approach to analyze their constitutionality. <u>See</u> Wilson R. Huhn, <u>Assessing the Constitutionality of Laws That Are Both Content-Based and Content-Neutral: The Emerging Constitutional Calculus</u>, 79 Ind. L.J. 801 (2004).

Rather, the paramount inquiry is whether the statute is content-based.  Because we have determined that subsection (d) is content-neutral, we must employ intermediate scrutiny.

The next question is which type of intermediate-scrutiny analysis to use.  In Goldhamer I, we observed that the distinction between "time, place, and manner" regulations and O'Brien-type regulations of conduct that have an incidental effect on speech is one without a difference and that the approach chosen has no real effect on the outcome of the case.  See Goldhamer, 2008 WL 4866603 at *4 (citing Hodgkins ex rel. Hodgkins v. Peterson, 355 F.3d 1048, 1057 (7th Cir. 2004)).  We employed the "time, place, and manner" approach set forth in Ward because it is more streamlined than the O'Brien approach, and we will do that here as well.

To pass constitutional muster under Ward, a content-neutral statute must (1) be narrowly tailored to serve a significant governmental interest; and (2) allow for ample alternative channels for communication of the information.  491 U.S. at 791.  We noted in our previous opinion that defendants' stated governmental interest constantly shifted throughout their briefs.  Defendants now assert that the significant interest served by subsection (d) is "plainly obvious": the maintenance and protection of public order, "which necessarily includes managing the flow of traffic to ensure that persons can navigate the streets safely during major public events teeming with pedestrian traffic."  (Defs.'

Consolidated Mem. at 5.)  Plaintiffs question this articulation, but it is fair to say that defendants are invoking three interests: maintaining public order, maintaining public safety, and regulating traffic on streets and sidewalks.  We have no difficulty concluding, and plaintiffs do not dispute, that these are significant governmental interests.  See Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 768 (1994) ("The State . . . has a strong interest in ensuring the public safety and order [and] in promoting the free flow of traffic on public streets and sidewalks . . . .").

Next we examine whether defendants have shown that subsection (d) is narrowly tailored to serve the interests of maintaining public order and safety and regulating traffic on streets and sidewalks.  Defendants have the burden of showing that the regulation promotes interests that would be achieved less effectively absent the provision.  See Horina v. City of Granite City, 538 F.3d 624, 634-35 (7th Cir. 2008); Weinberg v. City of Chicago, 310 F.3d 1029, 1038-40 (7th Cir. 2002).  Under the narrowly-tailored test, an ordinance need not be the least restrictive means for achieving the government's goals, but it cannot substantially burden more speech than necessary.  Weinberg, 310 F.3d at 1040.

Defendants fail to demonstrate that subsection (d) is narrowly tailored to serve the stated interests.  They argue in a conclusory fashion that public safety "would be less effectively achieved if

crowds could gather at will in the vicinity of troublesome
disturbances, and the police had no authority to order a
dispersal." (Defs.' Mem. at 7.) This is an inadequate showing.
See Horina, 538 F.3d at 633-35 (affirming the district court's
invalidation of an anti-handbill ordinance and stating that the
defendant Granite City had the burden of producing evidence showing
that the ordinance was justified); Weinberg, 310 F.3d at 1038
("[T]he City cannot blindly invoke safety and congestion concerns
without more."). Defendants do not address the fact that
subsection (d) makes it a criminal offense to fail to obey the
dispersal order, nor do they address the fact that the application
of subsection (d) is not limited to "troublesome disturbances."
Instead, defendants contend that subsection (d) is narrowly
tailored by the "six conditions that limit its reach" upon which
they previously relied. But these conditions are merely a
recitation (and a somewhat inaccurate one, at that)[6] of the
components of subsection (d). As plaintiffs point out, the
provision broadly permits the arrest of a person who fails to obey
a "lawful" order to disperse when others unconnected and unknown to

---

[6] Defendants maintain that subsection (d) is narrowly tailored because
"[i]t can only be applied when: (1) a disturbance 'likely to cause substantial
harm or serious inconvenience, annoyance or alarm' is in progress; (2) the
disturbance involves 'three or more persons'; (3) the disturbance is 'in the
immediate vicinity'; (4) the peace officer issues an order to disperse; (5) the
person subject to the dispersal order knows the order is being issued by a police
officer; and (6) the person "knowingly" fails to obey the order." (Defs.' Mem.
at 7.) Subsection (d), however, by its terms does not require any sort of
"disturbance"; the provision does not contain the word "disturbance." Rather,
it refers to "acts of disorderly conduct."

him commit "acts of disorderly conduct" in the "immediate vicinity" that are merely likely to cause serious "annoyance." We conclude that subsection (d) therefore burdens substantially more speech than is necessary.

Defendants cite two decisions, Colten v. Kentucky, 407 U.S. 104 (1972), and People v. Raby, 240 N.E.2d 595 (Ill. 1968), for the proposition that disorderly conduct statutes with "far fewer narrowing conditions" have survived facial First Amendment challenges. Both cases are distinguishable. The disorderly conduct statute in Colten authorized conviction for the refusal to disperse with the specific intent to cause inconvenience, annoyance, or alarm, or recklessly creating a risk thereof. The disorderly conduct statute in Raby authorized conviction for knowingly doing any act in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace. As plaintiffs point out, in both cases, the person violating the statute is the one who is deliberately acting in a manner to alarm or disturb or provoke a breach of the peace. Subsection (d), however, requires no such connection between the person failing to obey a lawful order to disperse and those who are committing acts of disorderly conduct that are likely to cause serious inconvenience, annoyance, or alarm. In any event, it is not the quantity of "narrowing conditions" that matters; a statute could have dozens of these conditions and still not be narrowly tailored

if the conditions are not meaningful in a constitutional sense. What matters is whether defendants' stated interests would be served less effectively without subsection (d); defendants have failed to make this showing.[7]

Defendants contend that subsection (d) is no different from the statute at issue in Colten because the Illinois Supreme Court has "interpreted [s]ubsection (d) to mean that protestors cannot, as a matter of law, be arrested or prosecuted for disorderly conduct on the basis of engaging in lawful First Amendment protest" and as so construed, the provision "does not substantially curtail Plaintiffs' First Amendment rights," citing City of Chicago v. Fort, 262 N.E.2d 473 (Ill. 1970) and City of Chicago v. Weiss, 281 N.E.2d 310 (Ill. 1972). (Defs.' Reply at 7.) We have addressed and rejected defendants' contention regarding Fort supra note 4. We also reject the contention that the Illinois Supreme Court provided any sort of limiting construction of subsection (d) in Weiss; it simply did not do so.

Under the last prong of the Ward analysis, a statute must leave speakers with ample alternative channels for communicating

---

[7] In Coates v. City of Cincinnati, 402 U.S. 611 (1971), the Supreme Court struck down as vague an ordinance that made it a criminal offense for three or more persons meeting together on a sidewalk or street corner to "conduct themselves in a manner annoying to persons passing by." The Court remarked: "The city is free to prevent people from blocking sidewalks, obstructing traffic, littering streets, committing assaults, or engaging in countless other forms of antisocial conduct. It can do so through the enactment and enforcement of ordinances directed with reasonable specificity toward the conduct to be prohibited." 402 U.S. at 614.

their message. "An adequate alternative does not have to be the speaker's first or best choice, or one that provides the same audience or impact for the speech. But the alternative must be more than 'merely theoretically available'––it must be realistic as well." Horina, 538 F.3d at 635 (citations omitted). In addition, "an alternative is not adequate if it 'forecloses a speaker's ability to reach one audience even if it allows the speaker to reach other groups.'" Weinberg, 310 F.3d at 1041. Defendants argue that subsection (d) leaves open ample alternative channels of communication because it requires that a person "knowingly" violate an order of dispersal before he or she can be arrested, and "[t]herefore, persons who are exercising their rights of expression under the First Amendment that are lawfully ordered to disperse may reconvene elsewhere and resume their demonstration/exercise of their First Amendment rights." (Defs.' Mem. at 8.) Defendants also argue that by pleading that they were told to go to a "free speech zone," plaintiffs have pled facts showing that, "on its face, Subsection (d) provides ample alternative channels for them to communicate their message."

Defendants are wrong on both counts; at most, they have shown that the statute allows for alternative channels of communication. But "[t]he mere existence of an alternative method of communication

cannot be the end of the analysis." <u>Weinberg</u>, 310 F.3d at 1041.[8]
Defendants have completely failed to address whether the
alternative channels are ample. When an individual is ordered to
disperse pursuant to subsection (d), usually there will be
alternative channels for those individuals to communicate their
views. But defendants cannot demonstrate that subsection (d)
allows for <u>ample</u> alternative channels.

The City requests that it be permitted to conduct limited
discovery on this issue, but there are two reasons why we do not
believe that discovery is necessary. The first is that defendants
have failed to satisfy the first two prongs of the <u>Ward</u> analysis.
The second reason is that no amount of discovery would be able to
remedy the fact that subsection (d) refers simply to an "order of
dispersal." When an ordinance is this vague, it is difficult to
see how it leaves open ample alternatives to allow those ordered to
disperse to convey their message. In <u>City of Chicago v. Morales</u>,
527 U.S. 41, 59 (1999), a plurality of the Supreme Court commented

---

[8]/ In <u>Weinberg</u>, the Seventh Circuit held that a Chicago ordinance banning
the peddling of merchandise on public property within 1,000 feet of the United
Center stadium was not narrowly tailored and did not provide for ample
alternatives. 310 F.3d at 1042. Plaintiff Weinberg authored a book critical
of the owner of the Chicago Blackhawks and wanted to sell his book. His intended
audience was Blackhawks fans, and the most opportune time to reach this audience
was outside the United Center before and after Blackhawks games. The Court,
noting that "[i]n evaluating First Amendment cases, we cannot check common sense
at the door," found that the United Center was a unique location for the sale of
Weinberg's book and that the ordinance prevented him from reaching his intended
audience. The Court held that the alternatives were not ample because
plaintiff's ability to communicate effectively was threatened. <u>Id.</u> In the
instant case, plaintiffs' location near the armed-forces recruiting booth was
obviously the preferred place for reaching their intended audience.

on a similarly vague phrase in a City of Chicago anti-gang-loitering ordinance, which stated that an officer "shall order [loitering gang members and persons loitering with them] to disperse and remove themselves from the area":

> This vague phrasing raises a host of questions. After such an order issues, how long must the loiterers remain apart? How far must they move? If each loiterer walks around the block and they meet again at the same location, are they subject to arrest or merely to being ordered to disperse again?

Subsection (d) raises the same types of questions, and although we are not currently discussing plaintiffs' vagueness challenge, these questions bear on the existence of ample alternatives for communication. In any event, defendants have not shown that subsection (d) allows individuals who are ordered to disperse ample alternative methods to communicate their message.

Defendants have failed to establish that subsection (d) satisfies the <u>Ward</u> analysis and thus survives constitutional scrutiny.

## C. <u>Vagueness</u>

Plaintiffs allege that subsection (d) is unconstitutionally vague in violation of their due process rights. "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory

enforcement." <u>Morales</u>, 527 U.S. at 56 (plurality opinion) (citing <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983)). Although plaintiffs contend that subsection (d) should be invalidated for both of these reasons, we will address only the latter. "[T]he more important aspect of vagueness doctrine is not actual notice, but the other principal element of the doctrine--the requirement that a legislature establish minimal guidelines to govern law enforcement." <u>Kolender</u>, 461 U.S. at 358 (internal quotation marks omitted).

In <u>Goldhamer I</u>, we stated as follows:

> [S]ubsection (d) poses the potential for arbitrary and discriminatory enforcement in that it involves determinations regarding what acts of disorderly conduct are "likely to cause" "substantial" harm or "serious" inconvenience, annoyance or alarm. Defendants assert that "'likely to cause' and 'serious' need not be defined by the Ordinance because they have perfectly clear common meanings" and an "officer must be guided by the generally accepted meanings of these terms, and not his subjective inclinations, in deciding whether an ongoing disturbance merits an order to disperse." We disagree. The phrases "likely to cause" and "serious" are not explicit standards. They provide little guidance for those who are applying subsection (d) and create the risk that the ordinance will be enforced at the whim of a police officer.

2008 WL 4866603, at *6. Our view has not changed. It is true, as defendants point out, that the Supreme Court has observed (in dictum) that "[c]ontrol of the broad range of disorderly conduct" "may be one [] area" where legislatures cannot establish standards "with great precision." <u>See</u> <u>Smith v. Goquen</u>, 415 U.S. 566, 581

(1974). But a statute still must provide sufficiently specific limits on the enforcement discretion of the police. See Morales, 527 U.S. at 60-64.

According to defendants, subsection (d) is "highly precise and detailed in the guidelines and restrictions on enforcement that it provides for the police." (Defs.' Mem. at 13.) Defendants recite the phrases comprising subsection (d) and contend that "[w]ith these six restrictions, the discretion of the police is significantly restricted." (Id. at 13-14.) This is the same faulty argument that defendants employed regarding the issue of narrow tailoring. Again, the sheer number of conditions contained in subsection (d) matters little; rather, we ask whether those conditions meaningfully limit a police officer's discretion. As plaintiffs put it, "[T]he number of factors [for an officer to consider] does not make the Ordinance more precise when several of the substantive terms are undefined and entirely left to the subjective discretion of a police officer." (Pls.' Reply at 7.)

Subsection (d) gives police officers unfettered discretion to decide whether three or more persons' acts of disorderly conduct are "likely to cause substantial harm or serious inconvenience, annoyance or alarm" and thus whether an individual or individuals "in the immediate vicinity" can be ordered to disperse. No guidance is given to an officer as to what acts of disorderly conduct are likely to cause these kinds of harm, inconvenience,

annoyance or alarm (the annoyance and alarm factors being
particularly problematic), or which persons are considered to be in
the "immediate" vicinity. The language of subsection (d) suffers
from compound vagueness and invites arbitrary enforcement by
leaving these determinations to an officer's subjective impression.
Contrary to defendants' assertions, the reach of subsection (d), by
its terms, is not limited to situations where the arrestee "engaged
in conduct that created a likelihood of substantial harm," Defs.'
Reply at 12, or when there is "an actual disturbance being
committed," Defs.' Mem. at 15. Furthermore, as discussed <u>supra</u>,
the Illinois Supreme Court has not placed any limiting construction
on the language of subsection (d). We find that subsection (d)
does not provide sufficiently specific limits on the enforcement
discretion of the police.

Having held that subsection (d) violates the First Amendment
and is unconstitutionally vague, we decline to reach plaintiffs'
challenge to subsection (d) on the ground of overbreadth.

## **CONCLUSION**

We find that there are no genuine issues of material fact
presented by the defendants and that the plaintiffs are entitled to
a judgment as a matter of law. Accordingly, defendants' motion for
summary judgment is denied and plaintiff's motion for summary
judgment is granted. We hold as a matter of law that subsection
(d) of Chicago Municipal Code § 8-4-010 is facially

unconstitutional in that it unduly restricts freedom of expression and is impermissibly vague.

A status hearing is set for March 25, 2009 at 10:30 a.m. to discuss the impact of this judgment on the various counts of the complaint.

DATE:        March 12, 2009


ENTER:       _____
             John F. Grady, United States District Judge